UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**HEALTH CARE SERVICES
CORPORATION,**

    **Plaintiff,**

    v.                                                    CIV. NO. 09-1213 ACT/LFG

**SOUTHWEST TRANE and
PETERSON WATER TREATMENT,**

    **Defendants,**

    **and**

**AMERICAN HALLMARK INSURANCE
COMPANY OF TEXAS,**

    **Plaintiff-in-Intervention,**

    v.

**PETERSON WATER TREATMENT,**

    **Defendant-in-Intervention.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Peterson Water Treatment's Motion in Limine to Exclude Joseph P. Crosson, P.E. from Testifying Regarding the Standard of Care, filed September 23, 2010 [Doc. 80]. Peterson Water Treatment ("Peterson") is asking the Court to limit the testimony of Joseph Crosson, P.E., ("Crosson") Plaintiff's expert. Plaintiff filed a response on October 12, 2010 [Doc. 87] and Peterson filed a reply on October 26, 2010 [Doc. 90].

    The facts underlying Plaintiff's claims are that on or about July 2, 2008, after an inspection of Plaintiff's cooling towers, Defendant, Southwest Trane, who installed and serviced the units, recommended that the scale buildup on the copper tubing in cooling towers RTU-1 and RTU-2 be

removed. Peterson cleaned the cooling towers. The cleaning which consisted of an acid wash was done between July 11-13, 2008. On July 13, 2008, Peterson discovered that one of the units, RTU-2, had shut down. The copper tubing in the cooling tower had been perforated.

Legal Standard.

Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of this case.

The purpose of Rule 702 is to ensure that all expert testimony is both relevant and reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *Kumbo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). The Court must perform a "gatekeeping inquiry...tied to the facts of a particular case" to determine if the proposed expert testimony is properly admitted. *Kumho Tire Co.*, 526 U.S. at 150 (internal quotation marks and citation omitted): *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1243 (10th Cir. 2000).

The obligation under Fed.R.Evid. 702 requires a two-part inquiry. "[A] district court must [first] determine if the expert's proffered testimony...has 'a reliable basis in the knowledge and experience of his [or her] discipline.'" *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 883 (10th Cir. 2005) (citations omitted). "Second, the district court must further inquire into whether proposed testimony is sufficiently 'relevant to the task at hand.'" *Id.* at 884.

Discussion.

Crosson testified in his deposition that he will offer two opinions at trial. The first is that the cause of the perforation of the copper tubing was the acid cleaning. This opinion is not at issue in

2

this Motion. The second opinion is that "because the system was being acid cleaned while running, it should have been more closely monitored[.]" Doc. 87 at Exh. A, pp. 99-100.

Peterson argues that Crosson is not qualified to give the second opinion because Crosson is a metallurgical engineer by training and profession and not an expert in chemical water treatment. Crosson never worked for a water treatment company and has not been trained in the application of water treatment processes. Crosson testified that he was not was familiar with the "exact procedures" for acid wash cleaning of scale building on copper tubing in cooling towers. He further testified that he did not hold himself out as an expert in the field of water treatment of HVAC units or an expert in the field of proper methods and procedures for cleaning HVAC units with scale build-up through the use of an acid wash treatment.

Plaintiff argues that Crosson's opinion is "not dependent on any expertise rooted specially in the 'water treatment industry,' or that necessitate 'water treatment industry' expertise." Doc. 87 at 2. Rather, Plaintiff asserts, Crosson's opinion is based on facts and Crosson's area of expertise, specifically, "metallurgy and the science surrounding how copper predictably will react to the conditions present here, namely copper tubing's predictable potential for damage given the time, pH levels, temperature, and other factors present during the acid exposure." *Id.*

In his deposition Crosson testified as follows:

> Q.   You had made a statement, so I don't know if it's coming from an expert point of view or what, that the technician for Peterson, when he came back the second night, should have observed that the(sic) more scale had come off in tower two. That sounds to me like part of the procedure for acid wash cleaning. So what is your basis, either by experience or training for making that opinion?
>
> A.   That's a metallurgical opinion. Any time you do an acid wash on any type of metal component, there is always the risk that corrosion of the metal component will occur. With that risk, you have to perform some monitoring, to make sure that that corrosion does not occur.

Doc. 87 At Exh. A, p. 76.

>   Q. Why, as a metallurgical expert, are you giving a standard of care opinion?
>
>   A. I'm giving an opinion based on the metallurgical conditions, wherein a piece of equipment is acid cleaned or any type of equipment is acid etched or exposed to acid, there is always the potential for corrosion attack of that material.  And given the fact that there was a concern here about the temperature that these units were operating at, then that concern should have been greater than.  You should monitor what you are doing.

*Id.* at p. 89.

The Court finds that Crosson has sufficient expertise to testify that Peterson should have closely monitored the acid cleaning process.  Rule 702 requires that the witness have sufficient "knowledge, skill, experience, training, or education" to qualify as an expert.  The degree of "knowledge, skill, experience, training, or education" is only that necessary to insure that the witness's testimony "assist the trier of fact. " *See Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932, 941 (10th Cir. 1994) (internal quotations omitted).  The Tenth Circuit has held that this standard should be construed and applied liberally.  *MCC Management of Naples, Inc. v. International Bancshares Corporation*, 2010 WL 503107, *2  (W.D.Okla. 2010) *citing United States v. Gomez*, 67 F.3d 1515, 1526 (10th Cir. 1995).

The fact that Crosson is not an expert in chemical water treatment or acid cleaning of cooling units is not determinative of whether he should be permitted to testify on the effects of acid on metal.  "Expertise in a specialized area directly related to the issue in question is generally not required, however, as long as the expert 'stays within the reasonable confines of his subject area.'" *Id. citing Ralston v. Smith & Nephew Richards, Inc*., 275 F.3d 965, 970 (10th Cir. 2001) (internal quotation omitted).  The courts do not require, as Peterson argues, that an expert be a specialist.  *Ash Grove Cement Co. v. Employers Ins. of Wausau*, 246 F.R.D. 656, 665 (D. Kan. 2007); *Burton v. R.J. Reynolds Tobacco Company*, 183 F. Supp. 2d 1308, 1312 ("The Tenth Circuit has rejected the

argument that a physician must be a specialist in a field to testify about subjects related to that field." (citation omitted). A lack of specialization does not affect the admissibility of the opinion, but only its weight.") *Burton, 183 F. Supp. 2d at 1312, citing Wright & Gold, supra*, at § 6265 ("Gaps in an expert witnesses's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility."); *Bullock v. Daimler Trucks North American, LLC*, 2010 WL 3922084, *3 (D. Colo. 2010) ("[A]s long as an expert stays within the reasonable confines of his subject area, our case law establishes a lack of specialization does not affect the admissibility of the expert opinion, but only its weight." *quoting Compton v. Subaru of Am. Inc*., 82 F.3d 1514, 1520 (10th Cir. 1996) (quotation marks and alternation marks omitted). "[T]he key is not whether a specialist would be preferable, but whether a witness with only a general background can still help." 29 Charles A. Wright et al., *Federal Practice & Procedure* §6252, p. 255, fn. 41.

Peterson does not dispute that Crosson is a qualified expert in the field of metallurgical science. As an expert in this field Crosson is qualified to testify that there is a risk of corrosion when acid is used to wash a metal component and thus monitoring should occur to make sure that the metal is not corroded by the acid wash. This opinion is based on metallurgical conditions which is within the expertise of Crosson. It is based on the science of how copper, a metal, would react when it is washed with acid. Crosson testified on this issue as follows:

> Q. Do you have any opinion as to the length of time it would take for chemical solution to wash over the tubing to cause that undercut appearance?
> A. The amount of time is dependent upon the local conditions, such as temperature, pH concentration, makeup of the scale and so forth.
> Q. So there are many variable that would determine how long it would take for that penetration to occur?
> A. Yes.
> Q. And to make sure I got them all, that would include makeup of the scale, is one of these?
> A. Yes.
> Q. The temperature of the copper tube?

| | | |
|---|---|---|
| A. | Yes. | |
| Q. | The pH of the chemical? | |
| A. | Yes. | |
| Q. | By that I mean, the pH of the chemical being used to wash the scale? | |
| A. | The Ph of the solution in contact with the tube. | |
| Q. | That's a much better way to say it. Would the aeration of the area have any effect? | |
| A. | Yes, that could have an effect also. The more oxygen, the more aggressive it could be. | |
| Q. | Are there other factors that you would list in what it would take to or what would effect the time necessary for this type of erosion-corrosion to occur? | |
| A. | Those are the primary factors. | |

Doc. 87, Exh.A, at p. 30.

This testimony demonstrates that Crosson's opinion at issue is not dependent on any expertise in the water treatment industry. The fact that Crosson is not a specialist in the water treatment industry goes to the weight of his opinion not the admissibility of his opinion.

The Court finds that Crosson's testimony is both reliable and relevant. His opinion is thus admissible under Fed.R.Evid. 702.

**IT IS THEREFORE ORDERED** that Defendant Peterson Water Treatment's Motion in Limine to Exclude Joseph P. Crosson, P.E. from Testifying Regarding the Standard of Care [Doc. 80] is denied.

*(signature)*
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE**